31061. PIERCE *v.* THE STATE.

Decided March 14, 1946. Rehearing denied March 28, 1946.

*James Maddox,* for plaintiff in error.

*Henderson Lanham, solicitor-general, Chastine Parker,* contra.

GARDNER, J. ■ The assignments of error on the overruling of the demurrer are without merit. The indictment charges the defendant with illegally possessing whisky on which the revenue stamps had not been affixed as required by the Code (Ann. Supp.), § 58-1056, as follows: "The possession of any distilled spirits or alcohol by any person which does not bear the tax stamps provided for herein shall be unlawful, and such distilled spirits or alcohol shall be subject to seizure by any peace officer, or agent of the revenue commissioner, and the offender shall be guilty of a misdemeanor and upon conviction shall be punished as such." In the answer of the Supreme Court to the certified question, that court had this to say concerning § 58-1056: "The purpose of the

penal provision of this section of the act was to prevent a defeat of the State's right to collect its tax on distilled spirits and alcohol imported into the State or manufactured in the State, and the possession of whisky in any county of the State in a container which does not have affixed thereon the necessary tax stamp is by the terms of the act made a penal offense punishable as a misdemeanor. It is a separate and distinct criminal offense from any other penal provision of the act. *Shafer* v. *State,* 193 *Ga.* 749, 754 (20 S. E. 2d, 34)." Therefore it is a separate and distinct offense in either a "wet" or a "dry" county for one to possess whisky "in a container which does not have affixed thereon the necessary tax stamp." When distinguished counsel argued this case orally before this court, he conceded this to be the law and made no contention as to the legality of the conviction under count 1.

■ Therefore it follows that the controversy concerning the defendant's conviction is grounded upon the contention under the second count. This contention, showing at first glance apparently a confusion, is based upon the inapt wording of the charge in the second count rather than the substance of the offense charged therein. It must be kept in mind that the prohibition law as it existed prior to the passage of the revenue act of 1937 still obtains, in those counties which have not made operative the provisions of that act by an adoption by the people under the provisions of the act, subject only to the specific exceptions contained in such act. See Code (Ann. Supp.) § 58-1078. The Supreme Court in its answer to the certified question states that §§ 58-1073 and 58-1077 of the Code (Ann. Supp.), should be construed together, and concludes the comment as to these sections as follows: "Unquestionably it was the purpose and intent of the General Assembly to legalize the possession, in a dry county, of one quart of whisky legally purchased for use and consumption, when properly stamped, and no more. The 'possession or control of more than one quart of spirituous, vinous, or alcoholic liquor, in any county of the State (except such counties in which liquor may be legally sold or transported under the terms of this act)' clearly has reference to the possession of more than a quart of tax-paid whisky in a dry county. To construe the words otherwise would necessarily imply that the possession of more than a quart of non-tax-paid

whisky, in a county in which liquor may be sold, is legal." The Supreme Court—after having thus held, and after having called attention to the fact that the Code, § 58-201, codified from the act of 1917 (Ga. L. Ex. Sess. 1917, p. 7), which prohibited the possession and control of whisky by any individual (subject to certain exceptions with which we are not here concerned), was made a misdemeanor, in any county, prior to said revenue act, and after the passage of said revenue act in "dry" counties—said further in its answer to the certified question: "We do not rule on the question whether or not the possession of whisky, such as described in the question certified, would be an offense under both the 'bone-dry' law (Code, § 58-201) and such codified section 58-1056 [Ann. Supp.]" It is true that the Supreme Court did not rule on the question whether the defendant in the instant case would be guilty of an offense under the Code (Ann. Supp.), § 58-1056, for having in his possession and control non-tax-paid whisky, under the first count, and for the mere possessing of whisky under § 58-201, which obtained prior to the passage of the said revenue act, and as charged in the second count of the indictment under question. This was due to the fact that this court did not specifically ask for instructions on this point. After a careful analysis of the prohibition law as it obtained before the passage of the revenue act of 1937, and as changed by the said act, we have reached the conclusion that, under the facts of the instant case, the defendant, on the first count, is guilty of violating the provisions of the Code (Ann. Supp.), § 58-1056, codified from such revenue act, which is an exception to the prohibition law as it obtained prior to the passage of said act. This provision of the Code, as above stated, makes penal the possession of non-tax-paid whisky in any county. And since the provisions of § 58-1056 do not conflict with the provisions of § 58-201, which makes penal the mere possession of contraband whisky, each count of the indictment sets out a separate and distinct offense in Floyd County, a "dry" county, and the trial court did not err in so holding.

■ As above stated, it is the wording rather than the substance of the charges in the second count of the indictment which has given rise to the confusion. That wording is to the effect that the defendant had more than one quart of whisky. It nowhere appears in this count that this allegation refers to more than one

quart of whisky contemplated under the Code, §§ 58-1073 and 58-1077. We have stated above that the court did not err in overruling the defendant's demurrers to the indictment. The only portion of the demurrer going to this feature of count 1 is contained in the fifth ground of the special demurrer, which reads: "Defendant specially demurs to count 2 of said indictment upon the ground that under the allegations thereof he might be found guilty, should it appear he had in his 'custody' any of the liquors or beverages alleged in said count, when under the provisions of the 'revenue tax act to legalize and control alcoholic beverages and liquors,' it is not made penal or criminal to have such liquors or beverages in your 'custody.' " In the light of this special ground, and under the allegations of the indictment, this question is not raised at all. Count 2 alleges that the defendant was unlawfully in possession of more than one quart of whisky. It does not state that he was in possession of more than one quart of whisky within the contemplation of the Code (Ann. Supp.), §§ 58-1073 and 58-1077, which the Supreme Court says must be construed together. No part of the demurrer, either general or special, attacks count 2 on this ground. We must, therefore, look to the evidence to see whether or not the allegations of this count were sustained. The evidence shows that the defendant was illegally in possession of approximately three quarts of "moonshine" contraband whisky. The reference to more than one quart is mere surplusage as to contraband whisky. The possession of any quantity of contraband whisky in a "dry" county is a violation of the Code, § 58-201. Under the allegations of count 2, it is immaterial what quantity of contraband whisky the defendant possessed. It was the contention of the defendant that he had no possession, custody, or control of any whisky at all. Therefore, in a "dry" county, one may be guilty of possessing non-tax-paid whisky under the Code (Ann. Supp.) § 58-1056; and, second, may be guilty also of the mere possessing of contraband whisky under § 58-201; and, in addition thereto, may be guilty of possessing more than one quart of stamped whisky under § 58-1077 (Ann. Supp.).

It follows, therefore, that under the record of this case, in view of the indictment and demurrers and the evidence, the court did

not commit reversible error in overruling the demurrers and the motion for a new trial for any of the reasons assigned.

*Judgment affirmed.* *Broyles, C. J., and MacIntyre, J., concur.*